NOT DESIGNATED FOR PUBLICATION

No. 119,413

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARLIN DWAYNE WILLIAMS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed July 26, 2019. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant, and *Marlin D. Williams*, appellant pro se.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., MALONE and GARDNER, JJ.

PER CURIAM: Marlin Dwayne Williams appeals the district court's summary dismissal of his K.S.A. 60-1507 motion as untimely. He contends that his motion and its accompanying affidavit show his actual innocence, warranting a finding of manifest injustice which excuses the untimeliness of his motion. Finding no manifest injustice, we affirm.

1

*Factual and Procedural Background*

Marlin Dwayne Williams was convicted of aggravated trafficking of a person under 18 years old, a felony. The Kansas Supreme Court affirmed Williams' conviction and sentence of 246 months. *State v. Williams*, 299 Kan. 911, 916, 329 P.3d 400 (2014). The facts of his case, which involved taking his 15-year-old victim from Wichita to Dallas in 2007 to join his prostitution ring, are fully detailed in the Supreme Court's opinion. 299 Kan. at 913-16. We need not repeat them here.

Williams filed his first K.S.A. 60-1507 motion in 2008 but the district court denied it because his direct appeal was pending. Williams filed his second K.S.A. 60-1507 motion in 2014, alleging his trial counsel provided constitutionally deficient representation. The district court summarily denied that motion and we affirmed. *Williams v. State*, No. 114,200, 2016 WL 7428361 (Kan. App. 2016) (unpublished opinion).

Williams filed his current K.S.A. 60-1507 motion, which underlies this appeal, in 2017. It argues (1) the district court erred by allowing hearsay testimony of the victim; (2) trial counsel failed to investigate key issues surrounding the victim; (3) the district court improperly admitted K.S.A. 60-455 evidence; and (4) the evidence was not sufficient to sustain a conviction for aggravated trafficking. The district court denied the motion as untimely and successive.

Williams moved the court to reconsider, arguing that it should have liberally construed his motion as an actual innocence claim and that a miscarriage of justice would occur if it did not do so. The district court denied Williams' motion to reconsider finding that Williams had not put forth a colorable claim of actual innocence. Williams appeals.

*Do the 2016 Amendments to K.S.A. 60-1507(f) Deprive Williams of a Remedy and Violate His Due Process Rights?*

We first address Williams' argument that certain amendments made in 2016 to K.S.A. 60-1507 deprive him of a remedy and violate his due process rights. This issue asks us to interpret a statute and presents a question of law over which we have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). Whether due process exists in a particular case is also a question of law over which we have unlimited review. *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 (2001).

*Analysis*

Kansas law provides that a defendant has one year from the date a conviction becomes final to file a K.S.A. 60-1507 motion. K.S.A. 2018 Supp. 50-1607(f)(1). A district court may extend that one-year time limit only to prevent manifest injustice. K.S.A. 2018 Supp. 60-1507(f)(2). In determining manifest injustice, we previously applied these three factors set forth in *Vontress v. State*, 299 Kan. 607, 616-17, 325 P.3d 1114 (2014):

> "[W]hether (1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the 1-year time limitation; (2) the merits of the movant's claim raise substantial issues of law or fact deserving of the district court's consideration; and (3) the movant sets forth a colorable claim of actual innocence, *i.e.*, factual, not legal, innocence." 299 Kan. at 616.

But the Legislature amended K.S.A. 60-1507(f) effective July 1, 2016, to state:

> "For purposes of finding manifest injustice under this section, the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-

3

year time limitation or whether the prisoner makes a colorable claim of actual innocence. As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2018 Supp. 60-1507(f)(2)(A).

This 2016 amendment eliminated the second *Vontress* factor—whether the merits of the movant's claim raise substantial issues of law or fact that render it deserving of consideration. The Kansas Supreme Court discussed this change in *State v. White*, 308 Kan. 491, 421 P.3d 718 (2018). There, as here, the movant filed a K.S.A. 60-1507 motion after the one-year deadline but argued that the manifest injustice exception warranted its consideration. The *White* court held that the 2016 amendments to K.S.A. 60-1507 do not apply retroactively; courts should apply the three *Vontress* factors for K.S.A. 60-1507 motions filed before July 1, 2016, but should use the two statutory factors for those filed after that date. *White*, 308 Kan. at 498-99. The *White* court noted that the amendment "took away more than one factor. It prohibited courts from looking at all circumstances and assessing them in totality." 308 Kan. at 501. In reaching that ruling, the *White* court found that the defendant, "like other pre-July 1, 2016 movants[,] had a vested right to argue the *Vontress* test, including the second factor and any other factor that might establish manifest injustice." 308 Kan. at 502. Williams claims that the elimination of the three-factor *Vontress* test and its totality of circumstances analysis infringes on his vested right to a remedy and violates his due process rights.

But Williams fails to acknowledge *White*'s limitation that the right to argue the *Vontress* factors was vested only as to pre-July 1, 2016 movants. Williams is not one of those movants because he filed his 60-1507 motion in 2017, after the 2016 amendments took effect. And those amendments do not eliminate his possibility of relief. Williams still has a right to bring these claims within a year. And if he files a K.S.A. 60-1507 motion outside that time, the court may still consider his claim if he shows manifest injustice. The statute allows courts to consider why the movant failed to file the motion within the one-year time frame and whether the movant makes a colorable claim of actual

4

innocence. K.S.A. 2018 Supp. 60-1507(f)(2)(A). The 2016 statutory amendments thus do not deprive Williams of a vested right or eliminate his possibility of relief. As a result, we apply the 2016 amendments, rather than *Vontress*, in reviewing whether Williams' motion, filed in 2017, showed manifest injustice excusing the untimeliness of his motion.

*Did the District Court Properly Deny Williams' Motion as Untimely?*

A district court has three options when handling a K.S.A. 60-1507 motion:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

When the district court summarily denies a K.S.A. 60-1507 motion, as it did here, we review the issue de novo to determine whether the motion, files, and records of the case conclusively establish the movant was not entitled to relief. 300 Kan. at 881.

Williams does not dispute that his motion is untimely—his direct appeal was final in July 2014, but he did not file this K.S.A. 60-1507 motion until October 2017. He claims, however, that he properly alleged actual innocence as described in K.S.A. 2018 Supp. 60-1507(f)(2)(A), so manifest injustice would occur if the district court did not extend the one-year time limit.

To support his claim of actual innocence, Williams attached to his motion an affidavit executed in 2010 by Demetrius Patterson. In that affidavit, Patterson states that he would been a trial witness and could have contradicted the victim, L.M.'s, testimony:

"I am fully aware of who [L.M.] is. On or between April 1, 2007 and May 5, 2007, [L.M] was not in my presents [sic], nor was I riding in the car with Marlin Williams.

. . . .

"Once I arrived here at [El Dorado Correctional Facility] I saw Marlin Williams, and we were talking about how [L.M.] implicated me as being with Marlin Williams on or between April 1, 2007 and May 5, 2007.

"If the Wichita Police Department would have attempted to interview me after [L.M.] made the statements she was in my presents [sic] between the above dates, I would have told the truth of the matter to clear my name, stating I was not around [L.M.] during that those dates. The Wichita Police Department and Defense Attorney made no attempt to locate me even though my first name (Demetrius) was mentioned in Marlin Williams police report, and could have been a witness for the State or Defense. I am a known gang member noted in the Wichita Police Department Gang File as Demetrius Patterson AKA Little Cheese. Furthermore, at that time I was on State Parole and easily accessible."

We find that Williams' claim of actual innocence fails for two reasons. First, in denying Williams' motion, the district court noted that it was not persuaded that Patterson's affidavit could not have been submitted with Williams' 2014 K.S.A. 60-1507 Motion, and "Movant provides no explanation other [than] it was simply not available." We agree that the record shows Williams had Patterson's affidavit in his possession in 2010 and shows no reason why Williams did not include it in his earlier 60-1507 motion which alleged ineffective assistance of counsel.

Second, this affidavit is not material enough to show that Williams is actually innocent. K.S.A. 2018 Supp. 60-1507(f)(2)(A) states that "the term actual innocence

6

requires the prisoner to show that it is more likely than not that no reasonable jury would have convicted the prisoner in light of new evidence."

The affidavit contradicts little of L.M.'s testimony, her testimony alone is sufficient to warrant Williams' conviction, and the record lacks evidence corroborating Patterson's allegations in his affidavit. But the record contains evidence supporting L.M.'s testimony, as well as that of other witnesses who testified. Two hotel managers in Dallas, Texas, corroborated that Williams stayed at their hotels on the dates L.M. said she stayed there with Williams, Casper, and the other female in late April and early May 2007. And Williams admitted to having contact with L.M. in Dallas, Texas.

Even if we credit Patterson's assertion that he was not with L.M. or Williams on the dates at issue, this fails to exonerate Williams of his crime. L.M. and other trial witnesses testified to much more than whether Patterson was in the car with Williams and L.M. from April 1, 2007, to May 5, 2007. L.M. testified in detail about her encounters with Williams and his acts of prostituting her. L.M. testified that she first met Williams when Patterson (whom she identified as Little Cheese) came to the house where she was staying. L.M. spoke with Williams, who was still in the car, while Patterson went inside the house. A few minutes later, Williams came back to the house, asked L.M. how old she was, and if she wanted to go to Texas that night. L.M. then traveled with a person she identified as Casper, Williams, and another female to the Dallas area. Patterson was seemingly uninvolved at this point, and the affidavit does nothing to dispute the most incriminating facts.

Considering all the evidence in the case, we find no error in the district court's determination that the proffered information was immaterial and would not have shown Williams' actual innocence.

7

Williams also argues that the district court erred by determining Patterson was not credible without holding an evidentiary hearing, citing *Beauclair v. State*, 308 Kan. 284, 295, 419 P.3d 1180 (2018) ("The district court is required to grant a new trial only when satisfied the recantation is true and material. . . . [A] district court cannot make such a credibility determination without an evidentiary hearing. . . . [C]redibility cannot generally be determined through cold affidavit testimony.") (quoting *Neer v. State*, No. 111,230, 2015 WL 1310815, at *4 [Kan. App. 2015] [unpublished opinion]). But any error in assessing Patterson's credibility without an evidentiary hearing was harmless, as the information proffered in the affidavit, even if fully credited, is not enough to show Williams' innocence.

Upon a de novo review of the record and files of the case, we find that Williams' 2017 K.S.A. 60-1507 motion, including Patterson's affidavit, does not establish manifest injustice as is necessary to overcome its untimeliness. We find it unnecessary to determine whether Williams' motion was also successive.

*Did the District Court Unreasonably Apply* Fischer?

Williams raises several arguments in his supplemental pro se brief. We have addressed those claims of error above except for his claim that the district court's dismissal of his K.S.A. 60-1507 motion "was a direct result of an unreasonable application of *Fischer v. State*." The district court quoted *Fischer v. State*, 296 Kan. 808, 295 P.3d 560 (2013), when articulating the three options it had when reviewing Williams' K.S.A. 60-1507 motion.

Williams argues that the district court erred by calling him "Defendant" in its order denying his K.S.A. 60-1507 motion. He argues that because his direct appeal was over, he could be considered the "'Movant,' the 'Complainant,' the 'Plaintiff,' the 'Petitioner,' 'Marlin D. Williams,' and/or any combination thereof," but not the defendant. So the

district court's finding that *the defendant* had no right to relief failed to show that he was not entitled to relief in this civil motion.

Even assuming that the district court misspoke in calling Williams "the defendant" in this civil action, Williams has shown no prejudice from that mischaracterization. The district court properly summarily denied Williams' 60-1507 motion by finding that the motion, files, and records conclusively showed he was entitled to no relief. The district court was not confused about the nature of this motion and did not refer to anyone but Williams as the subject of its ruling. It reviewed the facts, applied the correct law to the facts, and properly resolved Williams' K.S.A. 60-1507 motion under the standard set out in *Fischer*. It then determined that Williams' motion was untimely, successive, and failed to establish manifest injustice that would warrant its review. After reviewing the motion and all the files and records of the case, we find no error in the district court's summary denial of Williams' K.S.A. 60-1507 motion.

Affirmed.